Thank you very much, Your Honor, and may it please the Court. My name is Gary Rowe, and I represent Mr. Johnson. I would like, if I may, to reserve two minutes of time for rebuttal, and I'll keep my eye on the clock. I want to begin with a sentence from Lori Denson's 911 call that takes place at 2 minutes 20 seconds. It shows, I think, how this case cashes out into two basic propositions. She says, quote, he literally, from what the residents told me, he literally walked into 1297 and stood right there at our mailboxes, and he had a red duffel bag, and she just watched, and she said they pulled out a rifle. So what we have here is, at best, a secondhand tip concerning a rifle, and for all we know, it's a thirdhand tip. An unnamed she told a they who told Denson about a rifle, and Denson then called at some point 911. The viewers themselves didn't report it because of their unwillingness to get involved. But she knew who they were. There were people who lived in the apartment house, and she knew who they were. She may have. She may not have. It's probably likely that she did because she was the manager. Right. Sure. So they were not strangers. They were people who were findable. They were not strangers. We can't know that she remembered who they were. We can't know that they would be willing to talk to the police if she were to reveal their identities, and we have no idea what her memory would have been like if the police had shown up. Did she say that they didn't want to get involved? She did, specifically. She said they don't want to get involved. I can give you a tape site for that if you'd like. Two minutes, 55 seconds. The other residents just called me, and they don't want to get involved. And I do think that is important. So I think this case cashes out to two propositions. First, we can't know reliably that anyone saw a rifle. This could be a game of telephone. And we can't know ex ante that this isn't a false or malicious report and that Denson isn't being duped. Except that Denson then went and saw the guy and saw the bag, different color, I understand that, but a bag that looked like it could be holding a rifle, was the size to hold a rifle. And she followed him, and so she was at least known and reliable and corroborated at least some of what they said they saw. So what Denson saw is absolutely something the police could go on. But the question is, is it enough? And I don't think it is. What she saw is a man walking down the street. No resident ever pointed him out to her. So she saw a man walking down the street with a blue-green bag. Did she see him walking down the street, or did she see him leaving the apartment? It's not clear from the call when she saw him. She definitely saw him walking down the street. She says in after that quotation I gave you, and I walked over playing dumb, and he had already walked back out, and I followed him up to the sports bar. So he had already walked back out leads me to believe that she found him at some point as after he had left the apartment building, when he was somewhere down the street between the apartment. I'm sorry? Well, she doesn't know he walked out of the building. She saw him and deduced that he was the same person. But the salient point, I think, is that she never saw the rifle. She went out around the sixth minute of the call. She finally got a look at the bag. She hadn't seen it before because at six minutes and 30 seconds or so, she said, oh, wait, the bag is a green-blue or blue-green. And she was surprised. If I may interrupt you, here we're talking about reasonable suspicion, not probable cause. And reasonable suspicion is a pretty low bar. We've held even, you know, police think someone looks, quote, suspicious as a bulge in his pocket, and that's enough to stop someone. So isn't this enough here? I mean, I agree with you it's probable cause, no, but, I mean, for reasonable suspicion to stop him based on what we have here. I don't think it is, Your Honor, and that's because the cases, there are a number of cases in the Supreme Court and this court, all require that the person be identifiable and accountable. In the Navarrete case, for example, the U.S. Supreme Court held. I think what Judge Lee is asking is even if we only go by what Denson saw. I hope that was your question. Yeah. If that's, okay. Yeah, right. If that's the question, the answer is no. That is not reasonable suspicion because all you have is a black man wearing a tan shirt with a blue-green bag. She saw that person near her apartment, and all she saw was a bag. The fact that the bag. Well, it's not just a bag, right? I mean, it's, and we also have the video, right, so we know what the bag looked like, right? And it's fairly clearly, you know, not a bag full of clothes. It's a bag with a long, narrow, rigid object in it, right? It's a bag that has something filling the bag. I'll say that. Well, but not filling the bag in the sense of, you know, a big fluffy thing that fills the bag, right? That's true, Your Honor. That is true. So could it be a rifle? Well, yeah, we know that. Could it be, but ex ante, we don't. Could it be baseball gear with some baseball bats? Sure. Could it be janitorial supplies? And why can't you add to that that she was told by someone she knew that there was someone right nearby with a rifle? Because she hasn't told us who that someone is in the Terry case. No, but from her point of view, as to why she thought there was a rifle in the bag. She never explained why she thought there was a rifle in a bag. Well, she did explain it, because somebody told her that there was. Right, and that person could have been wrong. That's the central point. That person could have been wrong, but it adds to why she believed that there was a rifle in that bag and so reported. Right, but that knowledge that she has from the other person, because the person. Can I just jump to something else for a minute? Of course. Assuming we thought there was probable cause, this is the part that wasn't really explained in your brief. And assuming that I at least was not, didn't think that the flight itself gave a reason for probable cause, but that there was probable cause to arrest him because he was clearly disobeying orders. How does that get to the search of the bag? You seem to be agreeing that if those pieces fit together, then there was no problem about searching the bag. And that's what I'm wondering about. Yes, Your Honor. So, California Penal Code 148 is for resisting arrest. That's what he was arrested for. So you are essentially agreeing that if there was probable, if the stop was okay, then the arrest for resisting arrest, so-called, doesn't really say that, is okay, and let's assume that. And then the search is instant to the arrest, even though he was already handcuffed. That's the part I'm having a little bit of trouble with. Yes, we didn't raise in our opening brief any argument other than lack of probable cause to Terry's stop. So you're not challenging the question of whether if there was probable cause, the search of the bag was okay? That is correct. The case turns on whether there is probable cause, and we think there isn't, and therefore everything that followed was a lie. Well, you think there isn't because you think that the resisting arrest was not a valid charge. That's correct. Because if there's no probable cause under California- No, but there wouldn't be, I mean, you have to also be assuming that if the stop was not valid, then there couldn't be probable cause for resisting arrest. That is precisely the argument. That's precisely the claim.  We'll make sure you get time for rebuttal. Could you just address our decision under Vandergroen? Because that seems to have a very similar named caller to 911 reporting what some anonymous people told him or her, and you said that was fine there. So how is this different? Yes, it's different in a couple of ways. First, the people were sitting right there next to the bartender who made the call. There was no one next to or near Denson in this case. First- Why would that matter? I mean, she knew these were residents of her apartment house. I mean, it seems to me a pretty good implication that she knew who they were. Well, the key difference is those people were willing to be held accountable. They were prepared to be in dialogue with the police, whereas in Vandergroen, the- But they weren't prepared to say who they were. In Vandergroen, they didn't have a chance to say who they were. And moreover, because it was at a bar, it's very unlikely that the person who was conveying the information knew who they were. Well, they were sitting right there with the barkeeper. They were happy to hop on the phone with 911. They were telling- They were on the phone with 911? They offered to hop on the phone with 911 and be in dialogue with the bartender while he was on the phone. That's precisely what it is, to be in dialogue with the bartender while he was on the phone. And that's different than a case where there aren't three people sitting next to the bartender, but there's a whole apartment house worth of people, which makes it more like Brown, which is about a whole YWCA worth of people, a relatively large pool. And again, critically, they specifically say in this case that they don't want to get involved. Does that answer your question, Your Honor? Thank you very much. And we'll give you two minutes for rebuttal.  Thank you, Your Honor. May it please the Court, John Bollett for the United States. Judge Miller, I think you hit on one of the most important aspects of this case, and that is that San Bernardino PD not only received a reliable tip- I'm having trouble hearing you. Could you speak closer to the mic? I'm sorry. Judge Miller, I think you hit on one of the most important aspects of this case, which is not that the San Bernardino PD just relied on a reliable tip from an apartment manager alone, but that Sergeant Bennett corroborated that tip with his own observations once he arrived on the scene- You know, the defendant does make a big deal about this color issue, but I'm not convinced that there was even, from the perspective of the officers who received the tip, any mistake about the color. If you listen to the 911 call that the apartment manager provided, she said, you know, my residents told me that there was a man by the mailboxes with a red bag, and he pulled out a rifle. I went over to the mailboxes. He tried to dodge me once I got over there. I followed him to the sports bar next door. How do you think she saw him by the mailboxes? To me, the call indicated that she did say she saw him by the mailboxes, and when she followed him to the sports bar next door, she said that he seemed to go inside of a car and that he seemed to put the rifle in the car. She said, I can't see the rifle. It looks like he maybe put it in the car. And then about halfway through the call, at about six minutes, she says, oh, now he's walking on Golden, and he's carrying a turquoise duffel bag, not a red duffel bag. From the perspective of the police receiving this tip, there's nothing about that that indicates- That's a good question. In the video, when they're picking things up in the street, there are some red things on the street that they pick up. Do we have any idea what those are? No. I thought maybe there was something in the bag or something he was carrying or something that was bright red, but I don't know what it was. No, and I saw the same things. I don't think that he was carrying those. I think those may have been already on the street. But I guess the point that I'm getting at is that from the perspective of the police receiving the tip, it's just as consistent that he switched bags when he was in the car. The apartment manager said that he was in a car. It looks like he may have put the rifle in the car, and now he's walking away from the car with a turquoise duffel bag. I'm not convinced that there was necessarily a mistake there about the color of the bag. Well, whether it was a mistake or not, it was not the same color bag as what was reported. So if it had been the same color bag, it would be a relatively easy case, it seems to me. Correct. We do still think it is a relatively easy case because when Sergeant Bennett arrived on scene, he saw a man matching that exact description and carrying a bag that appeared to carry a long, weighted, thin object that looked like a rifle. When you combine that with the tip that the police received from the apartment manager, that clearly adds up to reasonable suspicion. And that's what this court said in Fernandez-Castillo. One of the things I've been wondering about is that I know we have an earlier case that said in California there's reasonable suspicion just if somebody thinks they have a gun because it's relatively a concealed gun or it's relatively unlikely that they have a license. Now, you know, I don't know, after Broon, where we are with that. I mean, and I don't know where we're with that. I guess the answer maybe is that that was true at the time, whatever may be true now, but in the new world, it may not be possible to stop people like that. Yeah, and the first point I will raise is, of course, a point that's not going to be satisfying, which is that defendant hasn't raised that issue in his brief. I can't hear you. I'm sorry. I'm sorry. The first point that I will raise that's probably not satisfying is that defendant did not raise that issue in his brief. Right, he did not. But second, you know, we're not claiming that it was necessarily illegal for him to walk down the street carrying a gun, but it did give rise to at least the ability to investigate and conduct a brief investigatory stop. In addition to the laws regarding concealed carrying. Well, what are you investigating? If it's legal to walk around with a concealed gun, then what are you investigating? Well, first, there's California Penal Code 25850 that says that it's illegal to walk around in public with a loaded gun, and it specifically provides in subsection B that police can investigate any firearm being carried in a public place and that if a defendant refuses to allow the inspection, that is probable cause for an arrest. So there is, in addition to the laws regarding concealed carry, a specific statute that says that police are entitled to investigate anyone carrying a firearm in a public place to determine whether it's loaded. This occurred before Bruin, right? So Bruin wouldn't affect this case. I mean, it shouldn't. But even if the court concluded that the Second Amendment always said what it said and Bruin's exposition of it was always there, I don't think this case is affected by it because we're not saying that it was necessarily illegal, that he was necessarily subject to arrest. Just because he was carrying a firearm, he was just subject to investigation, which is all that we need in order to win this case. All right. So then, not focusing for the moment on the stop, how do you get to the search? Again, defendant does not raise this on appeal. He raised it below, but he seems to have abandoned it. But search instituted to arrest. So if he disobeyed the officer's lawful commands, he was subject to arrest. But he was handcuffed by the time, and on the ground by the time that all this happened. If you watch the body cam video, Sergeant Bennett first opens the bag, actually as his partner is arresting a defendant and handcuffing him. He looks in the bag right at that time, and it's in the record in our briefs below because, of course, we only briefed it below. But there are cases from this court saying that a search roughly contemporaneous with arrest is still incident to arrest, even if it's not exactly at the time of arrest or before arrest, as long as it's roughly contemporaneous. But it doesn't seem honest. I mean, in fact, there was no way he was going to get to that bag. So there was no way he was going to get to the bag. But, again, this court in the past has even upheld searches incident to arrest that have occurred after an arrest has occurred. We may have, but I don't know on what rational theory because the whole search incident to arrest is basically based on looking around places he can reach to protect the police. That's the main theory. Well, I don't know if this will satisfy you, but below we also raised inevitable discovery because Sergeant Bennett said in his declaration in response to suppression below that San Bernardino PD policy would have required him to inventory what was in that bag at the time of defendant's arrest. So the rifle would have been inevitably discovered anyway, even if he didn't look at the bag on the scene. And even without an inventory, I take it, from the video one gets the impression it would have been difficult to pick up the bag without realizing what it contained. True. It was a drawstring bag with a hole in it. In fact, you can see in the hole. So I want to address at least the factors that this court has identified about why the tip was reliable. It was made on a recorded 9-1-1 line, a fact that this court deemed significant in Vandergroen, Edwards, and Perry-Cresto. Well, we know that Benson was reliable. Not only was it made on a 9-1-1 call, they knew who she was. And so that leads to two questions. One is, is her information alone enough, or does the fact that she was told this by people who she knows who they were, although the police didn't know who they were, feed into the reasonable suspicion as well? So I think that regarding the anonymity of the tipsters, first, those tipsters were not anonymous under this court's precedent, particularly in Fernandez-Castillo. They were rather a narrow class of identifiable tipsters. It's really hard to imagine a case that fits that definition more than this case, given that police knew exactly where all these potential tipsters lived, and they also knew the apartment manager who ran the building where they lived and who had received the tip and could presumably identify them. But that was true in Brown. These were residents in the YMCA, right? I think that in order to distinguish Brown, you really need to look no further than the words and the opinion itself. In Brown, that opinion was really driven not necessarily by the reliability of the tipsters in the sense that we don't know whether they're fabricating the story or not. It was really driven by the fact that in Washington State, it was not clear that there was any crime going on. This court said in Edwards that really the reliability of tipsters boils down to two questions. Does it seem that the tipster is lying, and does it seem like they're giving information about potential criminal activity that could justify a stop? Brown was really driven by the fact that Washington State did not make it presumptively unlawful to carry a firearm,  In Brown, the court said, Here we have both of those things. We have in California the fact that this is potentially criminal activity, according to this court's decision in Brown, and we have a high crime area. Ms. Denson said that we've had so many shootings at this complex. We've had so many murders here. The police know me by name. That's on the recorded 911 call. And so we do have a high crime area, and we have facts indicating criminal activity. But furthermore, even if you do consider this tip anonymous, the Fourth Amendment is not a rigid, formalistic inquiry, but rather a common-sense thing, and there's nothing about this tip that looks fishy. You have residents who were reasonably concerned for their safety. The apartment manager said they didn't want to get involved. They went inside their apartments, and they told me. It's ambiguous whether they even said they didn't want to get involved at all or whether they just didn't want to get involved while the guy was still walking around with a gun. And it was reasonable for them to filter this tip through the apartment manager, who is presumably in charge of maintaining safety in the apartment complex. So looking at it from a common-sense perspective, as this court must in a Fourth Amendment inquiry, there's just nothing about this tip that seems fishy. So we believe that the tip was reliable, and because he disobeyed the orders from Sergeant Bennett upon arriving, he committed a crime, he was subject to arrest, and the search was lawful. And you're not relying anywhere in that sequence on the flight? May I answer? Yes, please. We are as an alternative argument. If the court deems the stop unlawful, which we think it shouldn't, because there was clearly reasonable suspicion here for the initial stop, but if the court deems it unlawful, then we think that under this court's decision in Garcia, the flight means that the court can add the fact that the flight was unlawful. He had a guy up there with a baton telling him that he was going to hit him, in rather vulgar language at that point, and that's when he started to run. I mean, it demonstrates that he didn't want to get hit, but I don't know that it demonstrates guilt. Garcia said that it doesn't matter whether the unlawful seizure was what causally led to the flight. Just the fact that you flee during a police encounter attenuates and severs the connection between the alleged violation and the later discovery. And I will say that if you look at the video, it does not seem, based on the context, that defendant fled because he was scared. He fled because he was obstinate. That's exactly when he fled was when the guy raised the baton and said, I'm going to fucking kill you or fucking hit you. I believe he actually only said, I'm going to effing hit you as he was running already. But regardless, when you look at the video, defendant never seemed scared throughout this encounter. He instead says, go about your business. He even hits Sergeant Bennett's hand as Sergeant Bennett is trying to grab him when he's walking away. He was not afraid. He was just obstinate. Thank you. Thank you. Thank you for the rebuttal time, Your Honor. I want to address Brown, Fernandez-Castillo, and whether what Denson said alone without the rifle would be enough. So first on Brown, I think the case is almost identical to this one. The tip was first conveyed by someone else who could have called 911 but chose not to. It was by someone who expressly stated that she didn't want to get involved, didn't like the police, just like the tipster here said, I don't want to get involved. We have a YWCA pool of people. We have an apartment house pool of people. And here, the person didn't even stay on the scene. We don't know when Denson made the call. It might not even be contemporaneous. And that core fact about the color of the bag was wrong. Fernandez-Castillo is particularly telling, I think. The tip we know came from a man named Jay Harvey, who worked for the Montana Department of Transportation, and that was recorded in a log. And it was corroborated by the police. That is a far different pool. And the person can be held accountable. The whole point of validating 911 calls, according to the Supreme Court's cases and this Court's cases, is accountability. It substitutes for the absence of a name. We don't have the name. And the fact that the person who saw the gun didn't call 911 means that we don't have the benefit of the 911 identification of the person. Third, if we say that the spotting of the rifle isn't enough, is the fact that there's a man with a blue-green bag that could hold a rifle and has stuff in it that's kind of pointy enough. And I see my time is up. Could I just briefly wrap up? I don't think that is enough, because if you don't know it's a rifle in advance, it could contain any number of things, such as baseball bats, brooms, innocent things. The part I have such a hard time with is that the person who saw him with the bag herself had pretty good reason to think there was a gun in that bag, because she was told by people she did know that there was this guy who had a gun and who walked out of the apartment house, and it appears that she did see him, either at the mailboxes, I believe she did, or at least right outside the building. And so I don't know how you wash that point out of whether her report that she thought it was a gun, when she had pretty good reason to think it was a gun, because somebody told her there was a guy right there with a gun in a bag, who she did know. She knew them, whether the police knew them or not. Is that just irrelevant, the fact that she did know them and she did have a reason to think there was a gun in that bag? I don't think. The only reason she would think there was a gun in the bag is because of what she was told. Right. So it depends on— By people she knew. And in a situation where there were people with guns around here pretty frequently. Well, we don't know how well she knew them. She said on the tape that— She was a manager of this building and another building that she mentioned on the tape. So she had some acquaintance with them, definitely. But I think it's salient that they chose not to call 911 themselves, instead chose to relay it maybe through another— What I'm asking is, in evaluating the quality of her information, doesn't one take into account what she knew? I don't think you can rely on people who choose to tell someone else, rather than calling 911 themselves, when they could, because 911 is what makes a person plainly responsible. In the Navarrete case, for example, the Supreme Court said that the first-person tip received there was a very close case. And the only thing that put it over the acceptable line was the fact that it was reported contemporaneously and to 911, because 911 identifiability substitutes for giving a name. Thank you, counsel. Thank you, Your Honor. Thank both counsel for their arguments this morning, and the case is submitted.
judges: BERZON, MILLER, LEE